McCall v. Cone Mills Corp.

Affirmed.

Judges ARNOLD and HILL concur.

GOLDIE IRENE McCALL, ADMINISTRATRIX FOR THE ESTATE OF MARTIN McCALL, DECEASED, EMPLOYEE-PLAINTIFF v. CONE MILLS CORPORATION, EMPLOYER, AND LIBERTY MUTUAL INSURANCE COMPANY, CARRIER-DEFENDANTS

No. 8210IC296

(Filed 1 March 1983)

**Master and Servant §§ 68, 91— workers' compensation—claim for byssinosis not timely filed**

Plaintiff's decedent did not file his claim for disability from the occupational disease byssinosis within two years of notification by competent medical authority of the nature and work-related cause of his disease as required by G.S. 97-58(c) where a doctor advised decedent in 1965 that he had an occupational disease, that it was caused by breathing cotton dust, and that continuation of employment which involved exposure to cotton dust would ultimately prove fatal, but decedent's claim was not filed until 1977.

APPEAL by defendants from opinion and award of the North Carolina Industrial Commission filed 7 December 1981. Heard in the Court of Appeals 8 February 1983.

Defendants appeal from a decision awarding workers' compensation to plaintiff's decedent for the occupational disease byssinosis.

*Michaels & Jernigan, by Leonard T. Jernigan, Jr., for plaintiff appellee.*

*Smith, Moore, Smith, Schell & Hunter, by J. Donald Cowan, Jr., and Caroline Hudson, for defendant appellants.*

WHICHARD, Judge.

Plaintiff's decedent was born in 1910. He worked in a textile mill in Erwin from 1927 to 1947. From 1947 to 1956 he farmed. He commenced work for defendant Cone Mills in October 1956, and last worked there on 8 March 1965.

When decedent first went to work at the mill in Erwin, he was experiencing no breathing problems. After a few years of

McCall v. Cone Mills Corp.

working there he began experiencing chest tightness and developed a cough and breathing difficulties. During the years that he farmed, his breathing problems improved. When he subsequently went to work for defendant employer Cone Mills, his chest tightness with cough recurred; and exertional dyspnea became a permanent feature of his health. ·

In September 1959 he was hospitalized with bronchitis and emphysema. His pulmonary condition remained about the same from 1959 to 1965. In March 1965 he was hospitalized with acute illness, and did not return to work thereafter.

On 2 December 1977 decedent, through counsel, filed a claim for workers' compensation for disability resulting from pulmonary disease caused by exposure to cotton dust. The Hearing Commissioner concluded that decedent "did not file [his] claim . . . within two years after determining that his pulmonary disease and accompanying incapacity to earn wages were in part occupational in origin," and accordingly denied the claim. *See* G.S. 97-58(b) & (c); *Taylor v. Stevens & Co.*, 300 N.C. 94, 265 S.E. 2d 144 (1980).

The full Commission, in an opinion by Commissioner Clay in which Commissioner Vance concurred, reversed and awarded benefits. Its conclusion that the claim was timely filed was grounded on the following "finding of fact," to which defendants have duly excepted: "Plaintiff decided to retire after his hospitalization in March, 1965 because he believed his breathing problems were caused by his employment. However, at this time he had not been informed by competent medical authority of the nature and work-related cause of his occupational disease."

Chairman Stephenson dissented, stating that this "[f]inding of [f]act . . . is not only unsupported by any evidence, but is also completely contrary to all the evidence." We agree, and accordingly reverse.

G.S. 97-58(c) provides: "The right to compensation for occupational disease shall be barred unless a claim be filed with the Industrial Commission within two years after death, disability, or disablement as the case may be." "[T]he two-year time limit for filing claims under . . . G.S. 97-58(c) is a condition precedent with which claimants must comply in order to confer jurisdiction on

the Industrial Commission to hear the claim." *Poythress v. J. P. Stevens,* 54 N.C. App. 376, 382, 283 S.E. 2d 573, 577 (1981), *disc. rev. denied,* 305 N.C. 153, 289 S.E. 2d 380 (1982). "[W]ith reference to occupational diseases the time within which an employee must give notice or file claim begins to run when the employee is first informed by competent medical authority of the nature and work-related cause of the disease." *Taylor v. Stevens & Co.,* 300 N.C. 94, 102, 265 S.E. 2d 144, 149 (1980) (interpreting G.S. 97-58(b), (c) ).

Plaintiff's decedent testified, in pertinent part, as follows:

> While I was working for Cone . . . Dr. Arthur Freedman was my family doctor. He put me in Moses Cone Hospital twice. The first time was in 1959.

Q. Why did Dr. Freedman put you in Moses Cone Hospital in 1959?

A. On account of my breathing.

. . . .

Q. What do you recall telling Dr. Freedman [sic] what caused you to collapse?

A. He said my lung was full of lint.

. . . .

Q. Dr. Freedman told you your lungs were full of lint and dust, didn't he?

A. That's right. That's exactly what it was.

Q. You knew that in 1959?

A. I'll say I knew it. In other words, I knowed I couldn't breathe and I knowed when I was out there [*i.e.,* out of the mill] that I won't as sick as I was when I was in there, as far as my breathing.

. . . .

Q. Did you know what was causing your breathing difficulty when you went to work at Cone Mill?

A. Well, I figured it was the dust.

Q. The cotton dust?

A. Yes, I did. That's what I figured.

Q. OK, and at least in 1959 Dr. Freedman told you you had lint and dust in your lungs?

A. Right.

. . . .

Q. Did Dr. Freedman say anything to you about stopping work at Cone and finding other work?

A. Yes, sir. He told me . . . that I needed to get out of that mill. He said, "If you don't get out it[']s going to kill you."

. . . .

. . . I know I stopped working at Cone Mill . . . the 9th of March of 1965. I reckon it was the same year Dr. Freedman said I needed to get out of that mill, "if you don't it[']s going to kill you," . . . .

. . . .

Q. Would it be safe to say it was in 1965 [that Dr. Freedman told you to get out of the mill, if you didn't it was going to kill you]?

A. Yeah, it was '65 because that was—I had worked—well, tried to work January and February and started working on March.

. . . .

Q. When Dr. Freedman had you in Moses Cone Hospital the last time in 1965 did he say anything to you about the work at Cone Mills causing your breathing problems?

A. He said, "That cotton dust will kill you."

. . . .

Q. Did Dr. Freedman tell you in 1965 that the cotton dust would kill you if you didn't get out of [it]?

A. Absolutely. Absolutely.

Dr. Arthur Freedman, whom the court, without objection, found to be "a physician duly licensed to practice medicine by the

State of North Carolina, engaged in the general practice of medicine and diagnostic medicine," testified for defendants, in pertinent part, as follows:

> The final diagnoses when [decedent] was discharged . . . were . . . allergic pneumonitis due to exposure to cotton fibers and hypertensive vascular disease.
>
> . . . .
>
> . . . [Decedent] was advised to change his employment at the mill and to avoid exposure to cotton.
>
> . . . .
>
> . . . He was advised to change his employment at the mill and to avoid exposure to all cotton.
>
> . . . .
>
> . . . Somewhere it is in the record that I advised him at the time, back in 1965, that he did in fact have byssinosis. This is the initial impression of his admission in 1965. It says asthma associated with emphysema and possibly with byssinosis. That was my clinical impression. As to whether I know for a fact that [decedent] was advised that he had byssinosis, I think that we said the same thing, that he was advised to change his employment at the mill and to avoid exposure to all cotton.
>
> . . . .
>
> . . . Would I probably have told him that his breathing difficulty was due to working in the mill?
>
> . . . .
>
> . . . I probably would have done so, yes.

Dr. Freedman, as a licensed physician engaged in the general practice of medicine, who was sufficiently astute to diagnose byssinosis in 1965, was, as a matter of law, a competent medical authority. *See Poythress, supra,* 54 N.C. App. at 384, 283 S.E. 2d at 578. The foregoing evidence, which was uncontroverted, established that Dr. Freedman advised plaintiff's decedent in 1965 that he had an occupational disease, that it was caused by breathing cotton dust, and that continuation of employment which

involved exposure to cotton would ultimately prove fatal. Plaintiff's decedent thus "was fully apprised of the nature and work-related cause of [his] disease when [he] . . . left [his] job in 1965." *Id.* The time for filing his claim began to run, then, in March 1965, *id.*; and the prescribed filing period had long since expired when the claim was filed in 1977. This created a jurisdictional bar to the claim, and it should therefore have been dismissed "as being time-barred." *Id.* at 385, 283 S.E. 2d at 579. *See also Taylor, supra.*

We are advertent to the recent decision of this Court in *Dowdy v. Fieldcrest Mills, Inc.*, 59 N.C. App. 696, 298 S.E. 2d 82 (1982). Plaintiff there, like plaintiff here, did not file his claim within two years of notification that he had an occupational disease. An award of compensation was nevertheless upheld because plaintiff there did not become disabled from the disease until a time within the two year period; and both the disease and disability therefrom are required to trigger the running of the two year period. *See Taylor,* 300 N.C. at 98-99, 265 S.E. 2d at 147. Here, by contrast, the only conclusion the evidence permits is that plaintiff was disabled by his disease at the time he was informed thereof in March 1965. The cases are thus distinguishable.

We also consider *McKee v. Spinning Company*, 54 N.C. App. 558, 284 S.E. 2d 175 (1981), *disc. rev. denied*, 305 N.C. 301, 291 S.E. 2d 150 (1982), on which plaintiff in part relies, distinguishable. The Court there found the information conveyed to claimant insufficient to inform him of the nature and work-related cause of his disease. The specificity of information given to plaintiff here considerably exceeded that of the knowledge imparted to claimant there; and we believe plaintiff here, unlike the claimant in *McKee*, was advised in unmistakable terms of the nature and work-related cause of his disease.

Reference is made to *Payne v. Cone Mills Corp.*, 60 N.C. App. 692, 299 S.E. 2d 847 (1983), wherein another panel of this Court reached the same result upon similar facts.

For the reasons stated, the award is vacated.

Vacated.

Judges ARNOLD and HILL concur.